

# HELEN F. DALTON & ASSOCIATES, P.C.
## ATTORNEYS AT LAW

---

80-02 Kew Gardens Road, Suite 601, Kew Gardens, NY 11415

Tel. (718) 263-9591 Fax. (718) 263-9598

November 2, 2021

**Via ECF**
The Honorable District Judge George B. Daniels
United States District Court
Southern District of New York
500 Pearl Street
New York, New York 10007

Re: **Villegas, et al. v. CJ's Market, Inc., et al.**
       **21-CV-2879 (GBD)**

Dear Judge Daniels:

Our office represents Elidio Leonor Fernando Villegas ("Villegas") and Celso Felix Galvez ("Galvez") (collectively, "the Plaintiffs") and we submit this motion jointly with counsel for CJ's Market, Inc., CKim's Fruit & Vegetable Inc., Jemi Lee Kim and Chul Jae Kim (collectively, "the Defendants"), requesting the Court's approval of the parties' Settlement Agreement. The terms of the parties' settlement agreement ("Settlement Agreement"), attached hereto as **Exhibit 1**, were reached at the parties Court-annexed mediations held on August 17, 2021, August 30, 2021 and September 20, 2021.

The parties submit this motion in support of their position that the Settlement Agreement is fair and reasonable and does not raise any of the concerns cited in *Cheeks v. Freeport Pancake House, Inc*., 796 F.3d 199 (2d Cir. 2015). The parties address the monetary and non-monetary terms as well as Plaintiffs' counsel's requested attorneys' fees and respectfully request that the Court So Order or approve the Settlement Agreement.

    **I.**    **The Monetary Terms of the Settlement Agreement are Fair and Reasonable**

        **a.**  **The Settlement Amount**

Plaintiffs and Defendants agreed to resolve all claims asserted in this action, including Plaintiffs' counsel's attorneys' fees, for the amount of $55,000.00 in one payment within 30 days of receiving Court approval of the Settlement Agreement.

### b. Plaintiffs' Position

Plaintiffs brought this action against Defendants alleging violations of the Fair Labor Standards Act ("FLSA") and New York Labor Laws ("NYLL"). Plaintiffs alleged that they were employed as stockers at Defendants' fruit market and store located in The Bronx. In general, Plaintiffs alleged that, as former employees of Defendants, that they were not paid proper overtime rates of pay when they worked in excess of forty (40) hours per week.

Within the relevant statutory period that commenced in April 2015 pursuant to the NYLL's six-year statute of limitations, Villegas alleged that he was employed for approximately two years and three months and Galvez alleged that he was employed for approximately four-and-a-half years. Plaintiffs alleged that they were worked approximately 78 hours per week but were paid flat weekly salaries that did not properly compensate them for approximately 38 hours of overtime per workweek within the relevant statutory period. Plaintiffs alleged that they received the same weekly salary regardless of the number of overtime hours worked each week and that they were provided such pay in cash each week.

Lastly, Plaintiffs alleged that they entitled to recovery under NYLL §195 for Defendants' failure to provide proper wage notices and wage statements.

Based on the above, Plaintiffs initially alleged that they were owed approximately $300,000.00 in unpaid wages, assuming they could establish that they were owed 38 hours of unpaid overtime for each week of their employment within the relevant statutory period and could also establish that New York Hospitality Industry Wage Order methodology for calculating unpaid overtime at the time-and-a-half overtime rate owed (as opposed to the half-time rate) applied to their claims. Plaintiffs, however, understood that Defendants vehemently disputed the alleged number of hours worked each week, whether Plaintiffs were paid on an hourly or weekly basis, as well as the amounts paid to Plaintiffs. That these factual disputes would not be resolved until the time of trial at a much later date favored settlement at this juncture of litigation.

However, the most important factor in Plaintiffs' decision to reach an early settlement was based on Defendants' financial status. Plaintiffs had their initial concerns based on a thorough asset search conducted prior to the first mediation and those concerns were amplified based on the information and documentation exchanged regarding Defendants' finances during the mediation process. Most notably, the market at which Plaintiffs were employed was now closed and Defendants were no longer operating the business. As such, Plaintiffs were concerned that even if they were to prevail at trial at a much later date, they may not have been able to collect on any judgment against the Defendants. As such, Plaintiffs preferred a guaranteed payment in the near future through a Court-approved settlement than risk the possibility of not seeing any recovery in the distant future.

### c. The Settlement Amount is Fair and Reasonable

FLSA claims may only be settled and dismissed with prejudice under Rule 41 if they are approved by the Court. *Cheeks v. Freeport Pancake House, Inc.,* 796 F.3d 199, 206-207 (2d Cir. 2015). "Courts approve FLSA settlements when they are reached as a result of contested litigation to resolve bona fide disputes." *Kochilas v. Nat'l Merch. Servs., Inc.*, 2015 WL 5821631, at *7

(E.D.N.Y. Oct. 2, 2015) (citation omitted). "Typically, courts regard the adversarial nature of a litigated FLSA case to be an adequate indicator of the fairness of settlement." *Id*. (citation omitted). Furthermore, "[i]f the proposed settlement reflects a reasonable compromise over contested issues, the settlement should be approved." *Id*. (citations omitted). "Generally, there is a strong presumption in favor of finding a settlement fair, as the Court is generally not in as good a position as the parties to determine the reasonableness of an FLSA settlement." *Lliguichuzhca v. Cinema 60, LLC,* 948 F. Supp. 2d 362, 365 (S.D.N.Y. 2013) (citation and internal quotation marks omitted).

The parties have agreed to settle all claims asserted in this matter against Defendants for $55,000.00. The parties believe that this amount is reasonable considering Plaintiffs' claims and the defenses maintained by Defendants in this matter. Moreover, the settlement amount was only achieved after multiple mediation sessions before a qualified and experienced neutral through the Court-annexed mediation program. The parties had genuine, bona fide disputes over the hours worked by Plaintiffs and the pay received by Plaintiffs but negotiated in good faith to resolve these disputes with a fair and reasonable settlement amount. Moreover, the settlement amount accounts for the realities of the situation, namely Defendants' financial abilities and the risk of non-recovery even if Plaintiffs were to obtain a judgment against Defendants at the time of trial.

## II.     The Non-Monetary Terms of the Settlement Agreement are Fair and Reasonable

"In FLSA cases, courts in this District routinely reject release provisions that 'waive practically any possible claim against the defendants, including unknown claims and claims that have no relationship whatsoever to wage-and-hour issues.'" *Gurung v. White Way Threading LLC*, 226 F. Supp. 3d 226, 228 (S.D.N.Y. 2016) (quoting *Lopez v. Nights of Cabiria, LLC*, 96 F. Supp. 3d 170, 181 (S.D.N.Y. 2015)). Moreover, "[i]n the context of an FLSA case in which the Court has an obligation to police unequal bargaining power between employees and employers, such broad releases are doubly problematic." *Martinez v. Gulluoglu LLC*, No. 15 Civ. 2727 (PAE), 2016 WL 206474, at *2 (S.D.N.Y. Jan. 15, 2016) (quoting *Camacho v. Ess-A-Bagel, Inc.*, No. 14-cv-2592 (LAK), 2014 WL 6985633, at *4 (S.D.N.Y. Dec. 11, 2014)).

Here, the release in Paragraph 2 of the Settlement Agreement ("Release") is carefully-tailored to claims under the FLSA and NYLL. The Release does not raise any concerns regarding unequal bargaining power between Plaintiffs and Defendants, and the Release is not overbroad such that there is a concern that Plaintiffs are releasing any and all possible claims against Defendants, including claims unrelated to the claims asserted in this action.

Furthermore, the Settlement Agreement does not contain any confidentiality provision that would otherwise preclude Plaintiffs from openly discussing their experiences litigating this matter as rejected by *Cheeks*.

As the Release is carefully drafted to comply with Second Circuit case law in FLSA matters and there is no confidentiality clause contained in the Settlement Agreement, the parties' position is that the non-monetary terms of the Settlement Agreement are also fair and reasonable and comport with the standards articulated in *Cheeks*.

### III.     Distribution to Plaintiffs and Requested Attorneys' Fees and Expenses

#### a. Distribution to Plaintiffs

The parties agreed to a global settlement of $55,000.00 to resolve all claims asserted against the Defendants in this action. If the Agreement is approved by the Court, Plaintiffs will recover an aggregate amount of $36,167.00. Each Plaintiff will receive an amount based on his calculation of damages, which accounts for the alleged dates of his employment, the alleged hours that he worked, and the alleged pay that he received each week. These amounts are identified in Paragraph 1 of the Settlement Agreement.

#### b. Requested Attorneys' Fees and Expenses

Plaintiffs' counsel respectfully requests $750.00 for identifiable expenses, which include:

- the Southern District of New York filing fee in this matter: $400.00
- the costs of service of the Summons and Complaint on Defendants in this matter: $350.00

Plaintiffs' counsel respectfully requests one-third of the settlement less the expenses ($54,250.00), or $18,083.00 in attorneys' fees, as agreed upon in the Plaintiffs' retainer agreements with this firm. Therefore, if this request is approved, the total amount to be paid to the attorneys for their fees and expenses in this matter is $18,833.00.

**Settlement Amount:** $55,000.00
**Attorneys' Expenses:** $750.00
**Settlement less Expenses:** $54,250.00
**Requested Attorneys' Fees:** $18,083.00 ($54,250.00 / 3)
**Total payable to Attorneys:** $18,833.00 ($18,083.00 + $750.00)
**Total payable to Plaintiffs:** $36,167.00 ($55,000.00 - $18,833.00)

Plaintiffs' attorneys and their clients have retainer agreements that are reduced to writing and are signed by the clients. Attorneys' fees of 33% on FLSA and NYLL claims are routinely approved by courts in the Second Circuit. *See, e.g., Calle v. Elite Specialty Coatings Plus, Inc.,* 2014 U.S. Dist. LEXIS 164069 (E.D.N.Y. Nov. 19, 2014) (approving settlement of FLSA and NYLL claims stating that a "one-third contingency fee is a commonly accepted fee in this Circuit"); *Rangel v. 639 Grand St. Meat & Produce Corp.,* 2013 U.S. Dist. LEXIS 134207 (E.D.N.Y. Sept. 19, 2013). Courts in this District typically approve a fee of one-third or less of the settlement amount. *See Santos v. Yellowstone Props, Inc.*, 2016 WL 2757427 at *4 (S.D.N.Y. May 10, 2016).

This request for attorneys' fees is supported by the work performed by Plaintiffs' counsel throughout the litigation of this matter and the recovery secured through their efforts. Plaintiffs' counsel has zealously advocated for their clients throughout the litigation process and believe that the settlement amount secured is a product of their efforts. Furthermore, the fee requested is reasonable in relation to the recovery received by Plaintiffs.

IV.     **Closing**

In closing, the parties believe that the settlement amount and the terms of the Agreement are fair and reasonable. The settlement was the product of back-and-forth negotiations between experienced counsel with the assistance of an agreed-upon wage-and-hour mediator selected through the Court-annexed mediation program. As such, we respectfully request that the Court approve the Settlement Agreement. We thank the Court for its consideration and remain available to provide any additional information.

Respectfully submitted,

*James O'Donnell*
James O'Donnell, Esq.